# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JEFFREY S. ALLSHOUSE,

          **Plaintiff,**

    **vs.**

COMMISSIONER OF
SOCIAL SECURITY,

          **Defendant.**

_____/

**CIVIL ACTION NO. 07-12516**

**DISTRICT JUDGE ARTHUR J. TARNOW**

**MAGISTRATE JUDGE MONA K. MAJZOUB**

## <u>REPORT AND RECOMMENDATION</u>

<u>**RECOMMENDATION:**</u>    This Court recommends that Plaintiff's Motion for Summary Judgment (Docket no.21) be DENIED, and that of Defendant (Docket no. 16) DENIED, and that the case be REMANDED for further proceedings consistent with this Report.

***

Plaintiff filed an application for Disability and Disability Insurance Benefits with a protective filing date of November 17, 2003 alleging that he had been disabled and unable to work since April 17, 2003 as a result of lower back pain, numbness in the right buttock, thigh, calf, foot and toes. (TR 47-49, 57, 61). The Social Security Administration denied benefits. (TR 29-32). A requested *de novo* hearing was held on March 23, 2006 before Administrative Law Judge (ALJ) B. Lloyd Blair. (TR 26, 391). The ALJ subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability at any time from April 17, 2003 through the date of the ALJ's July 28, 2006 decision. (TR 26). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 10-12). The parties filed Motions for Summary Judgment. The issue Plaintiff raises for review

is whether the ALJ's decision is supported by substantial evidence.

Plaintiff was 40 years old at the time of the administrative hearing. (TR 396). Plaintiff has a high school education and has past work experience as a custodian. (TR 396-97). Plaintiff also worked selling and delivering automotive after-market parts. (TR 397). In both jobs Plaintiff lifted up to seventy-five pounds. (TR 396-97). Plaintiff alleges that he has been disabled since April 2003, when he jumped down from his truck and injured his back. (TR 285). Plaintiff testified that he has lower back pain, pain in the right hip, and numbness and pain in the right lower extremity. (TR 398).

Plaintiff testified that he participated in physical therapy for his back in 2003 and it aggravated his condition. (TR 398). Plaintiff also had a microdiscetomy performed on his back. (TR 203, 399). Plaintiff testified that his back pain is constant, it is located at L3- L4 to the L5-SI and radiates down his right lower extremity. (TR 399). At the time of the hearing Plaintiff rated his pain at an 8 on a scale of 10. (TR 400). Plaintiff takes Nortriptyline, Neurontin and Vicodin for back pain. (TR 400). He uses a Lidoderm patch every day on his right lower extremity. (TR 403). When questioned by the ALJ Plaintiff testified that he has no side effects from the medication. (TR 400). When questioned by his attorney Plaintiff testified that the Vicodin makes him drowsy. (TR 402). His right lower extremity swells at least four to five times a week and he lays down and props his foot up to relieve the swelling. (TR 403-04). About once a week it swells so much that he cannot wear a shoe. (TR 404).

Plaintiff lives alone in a ground level apartment and sometimes cooks or does laundry. (TR 400-400A). His mother assists him with the laundry, vacuuming and grocery shopping and brings food to him. (TR 400A). He can dress and shower himself. (TR 405). Plaintiff has no hobbies and

watches television all day, but he finds it hard to concentrate on the TV shows due to his pain. (TR 401). Plaintiff testified that he cannot climb stairs, bend over to tie his shoes or squat. (TR 400A, 404). Plaintiff testified that the maximum weight he can lift is ten pounds, he can stand ten minutes before he has to sit, he can sit ten minutes before he has to stand and he can walk only a quarter of a city block. (TR 401). Plaintiff testified that he lies down periodically and within a one-hour period he goes from lying down to standing, to sitting, to lying down again. (TR 403). He testified that prior to his current condition, he weighed 260 pounds. (TR 405). Plaintiff weighed 304 pounds at the time of the hearing and at one point his weight was as high as 318 pounds. (TR 405).

### *Medical Evidence*

Plaintiff had back pain prior to the April 2003 injury and treated for back pain in 1987, 1990 and 1991. (TR 119, 122, 126). In 1991 Plaintiff suffered lower back pain after falling down stairs. (TR 120). Plaintiff also reported to an emergency walk-in clinic for pain in his right foot as early as 1990 and complained of weakness in his right leg in 1991. (TR 119, 123). A February 2003 x-ray revealed degenerative changes with evidence of degenerative disk disease at L4-5 and L5-S1. (TR 154).

In March 2003 Plaintiff reported to the emergency room for pain in his left shoulder and numbness in his fingers. (TR 158-64). In April 2003 Plaintiff reported to Sparrow Health System complaining of lower back pain. (TR 165-69). An MRI of the lumbosacral spine showed L5-S1 disk protrusion with a herniated nucleus pulposus and an L3-L4 annular tear with 7 mm central cord intrusion. (TR 174-75). On April 24, 2003 Christopher J. Abood, M.D. examined Plaintiff for complaints of low back and right leg pain and diagnosed right lumbar radiculopathy and right L3-L4 disk herniation. (TR 258-60). Dr. Abood recommended physical therapy for the lumbar spine due

to the recent onset of pain. (TR 260). Plaintiff's symptoms worsened with physical therapy and in May 2003 Dr. Abood performed a microdiscectomy at L3-4. (TR 203-07, 332). In June 2003 Dr. Abood noted that Plaintiff was improving from the surgery, reported decreased pain in his right leg and improved walking. (TR 264). However, Plaintiff still had some difficulty walking. (TR 264).

The records show that Gerald T. Riess, M.D., treated Plaintiff as early as November 2000 following Plaintiff's left hemispheric stroke. (TR 133, 295). From November 2003 through February 2004 Dr. Riess prescribed time frames in which Plaintiff was unable to work and scheduled periodic dates upon which to re-evaluate Plaintiff's ability to return to work. (TR 299-308). Similarly and in response to the same form, Dr. Abood opined that Plaintiff was unable to work from April 24, 2003 through November 10, 2003 with periodic reevaluations. (TR 309-16). On December 26, 2003 Dr. Riess noted that an EMG revealed right-sided lumbosacral polyradiculopathy involving both the L5 and S1 levels. (TR 287, 289).

In November 2003 Plaintiff was evaluated by Thomas R. Lilley, O.T.R. (TR 269-84). Mr. Lilley noted that Plaintiff's right lower extremity appeared weaker than the left. (TR 274). Plaintiff reported constant dull aching in the low back and constant numbness and tingling in the right leg. (TR 284). He also reported that sometimes his right big toe twitches at night. (TR 284). Mr. Lilley concluded that Plaintiff was functioning "within the light-medium work level (lifting 35 pounds occasionally and 20 pounds or less frequently)" but, due to deconditioning, "he does not appear capable of safely performing frequent or continuous lifting or carrying." (TR 274).

On January 19, 2004 a state agency medical consultant completed a Physical Residual Functional Capacity Assessment and concluded that Plaintiff can occasionally and frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit about six

hours in an eight-hour workday and is unlimited in the ability to push and/or pull as consistent with the exertional lifting restrictions. (TR 323). Plaintiff was unlimited in environmental limitations, but should avoid all exposure to hazards including machinery and heights. (TR 326).

In May 2004 Plaintiff was treated at a pain management center. (TR 332). Plaintiff declined nerve block injection therapy, there were no new recommendations for rehabilitation and it was recommended that Plaintiff increase his Neurontin. (TR 333). The treating nurse noted that Plaintiff's muscle strength was significantly reduced in the lower right extremity. (TR 333). In July 2004 Plaintiff reported to the emergency room for abdominal pain resulting from a recurrent umbilical hernia. (TR 129-32, 381, 383). The report notes that he used a cane to walk. (TR 382). In October 2004 the Family Health Center of Williamston referred Plaintiff to a pain clinic for his complaints of back pain. (TR 376).

Plaintiff treated with Norine Tracy, M.D., from September 2004 to October 2005. (TR 343-68). Upon referral from Dr. Tracy, on January 20, 2005 Mohammad Rabbani, M.D., P.C., performed a body bone image, radionuclide angiogram and blood pool images of both feet. (TR 367). Dr. Rabbani diagnosed plantar fasciitis in both feet, severe in the left and minimal in the right, decreased activity of the right foot, hyperemia of the left foot, and degenerative changes of the dorsum of the left foot and left first metatarsal phalangeal joint. (TR 367). Dr. Tracy completed a Medical Assessment of Physical Capacity to Work on October 10, 2005 and opined that Plaintiff could lift up to ten pounds, sit six hours in an eight-hour workday and can never climb, balance, stoop, crouch, kneel, bend or crawl. He can only occasionally engage in pushing, pulling and reaching. (TR 343). Dr. Tracy noted that Plaintiff must lie down three to four times daily for twenty minutes each time and must rest approximately ten to twelve times daily for ten to fifteen minutes

each time. (TR 344). She noted that Plaintiff "can not bend or twist" and has weakness and pain in his right leg. (TR 344, 370). Dr. Tracy diagnosed Plaintiff with Reflex Sympathetic Distrophy (RSD). (TR 370).

Plaintiff treated with Jeffrey S. Pinto, M.D., in February 2005 for complaints of back pain and right leg pain and numbness. (TR 337). Dr. Pinto's evidence is set forth in the analysis below.

## *Vocational Expert*

The Vocational Expert (VE) classified Plaintiff's prior work as a custodian at heavy and unskilled and heavy as Plaintiff performed it. (TR 407). Plaintiff's other jobs were as parts clerk and they are classified as heavy and semi-skilled and heavy as Plaintiff performed them. (TR 407).

The ALJ asked the VE to consider an individual who is able to lift ten pounds occasionally and less than ten pounds frequently, can stand or walk for no more than two hours in an eight-hour workday, can sit for six hours, needs a sit/stand option at will, should only occasionally use ramps or stairs, stoop, crouch, kneel or crawl, should never use ladders, scaffolds or ropes, should avoid exposure to all hazards and should not walk on uneven surfaces. (TR 407). The VE testified that such an individual would not be able to do Plaintiff's past relevant work. (TR 408). The ALJ asked the VE to consider such an individual with the above-stated limitations who has Plaintiff's vocational profile including age, education and work history. (TR 408). The VE testified that there would be significant jobs in the lower peninsula of Michigan which such an individual could perform, including hand packager (250 jobs), sorter (130 jobs), inspector (600 jobs), assembler (7,000 jobs), investigator (1,400 jobs) and administrative support (1,600 jobs). (TR 408). The VE testified that her testimony was consistent with the Dictionary of Occupational Titles except that the DOT does not address the sit/stand option, which the VE based upon her experience and education.

(TR 408). The VE testified that assuming Plaintiff's testimony was credible, there are no jobs in the regional or national economy which he could perform. (TR 409).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2008, has not engaged in substantial gainful activity since April 17, 2003 and suffered from degenerative disc disease and morbid obesity, all severe impairments, he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 22). The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible, his exertional and non-exertional limitations allow him to perform less than the full range of sedentary work, and concluded that he was capable of performing a significant number of jobs in the economy. (TR 25-26). Therefore he was not suffering from a disability under the Social Security Act. (TR 26).

**STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human*

7

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS:**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant

can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff alleges that the ALJ erred by omitting discussion of Plaintiff's impairments at step two and in the RFC determination, rejecting the opinions of treating physicians, making an improper credibility finding and failing to meet his burden at step five to show that there is other work in economy which Plaintiff can perform. (Docket no. 21 at 10).

### *The ALJ's Determination Of Impairments At Step Two*

Plaintiff alleges that the ALJ failed to consider evidence of Plaintiff's RSD and plantar fasciitis in step two of his disability determination. Plaintiff's application indicated that he suffers from numbness and pain throughout his lower right extremity. (TR 61). At the hearing, Plaintiff testified to the condition of his right lower extremity including swelling, an abnormal lack of hair growth, and pain and numbness throughout the leg. (TR 399, 403). The ALJ did not address the physicians' opinions that Plaintiff suffered from RSD and plantar fasciitis.

The record contains medical evidence that there was a medical condition involving Plaintiff's legs, particularly the right leg, and medical opinions diagnosing plantar fasciitis and RSD. (TR 335-38, 342, 344, 353, 367, 370). However, the ALJ did not mention the conditions affecting Plaintiff's right lower extremity or these diagnoses in his decision except for his reference to a February 2005 x-ray that showed mild degenerative changes of osteoarthritis in Plaintiff's right hip. (TR 23, 342).

The ALJ's decisions does not show that he considered evidence of Plaintiff's alleged plantar fasciitis and RSD.

In February 2005 Dr. Pinto noted that the possibility of RSD needed to be clarified and/or addressed. (TR 335, 338). Dr. Pinto noted that Plaintiff's right calf was decreased in size. (TR 335). A prior EMG showed increased uptake "in the right foot consistent with either RSD or plantar fasciitis." (TR 335). In December 2005 Dr. Rabbani noted that a radionuclide angiogram and blood pool images of both feet showed increased activity of the left foot and decreased activity of the right foot. (TR 367). A delayed total body bone image and spot views showed increased activity involving the inferior aspect of the left calcaneus consistent with plantar fasciitis and the inferior aspect of the right calcaneus showing minimal increased activity. (TR 367). Dr. Tracy diagnosed RSD. (TR 370).

It is not for this Court to weigh the evidence and draw conclusions regarding the severity of Plaintiff's RSD and/or plantar fasciitis. The case should be remanded to the ALJ to consider the evidence set forth above and other relevant evidence contained in the medical record addressing Plaintiff's lower extremities. On remand the ALJ should consider evidence of Plaintiff's alleged RSD in accordance with SSR 03-2p, 2003 WL 22399117 (Oct. 20, 2003). SSR 03-2p recognizes that RSD may be the basis for a finding of "disability" and sets forth the required clinically documented signs to be considered in establishing the presence of RSD. The ALJ must clearly set forth in his decision the weight given to these opinions, any basis for rejecting the opinions consistent with 20 C.F.R. § 404.1527, the severity of the conditions affecting Plaintiff's lower right extremity, and any resulting exertional or non-exertional limitations.

***Treating Physician & Treating Source***

The Plaintiff argues that the ALJ failed to consider occupational therapist Mr. Lilley's opinion in accordance with SSR 06-3p yet uses it to impeach Dr. Tracy's opinion. (TR 270-84). The ALJ properly considered Mr. Lilley's opinion in accordance with SSR 06-3p. As an occupational therapist, Mr. Lilley is not an "acceptable medical source," who can establish the existence of a medically determinable impairment, give a medical opinion and be considered a treating source entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939. However, he is an "other source" whose evidence must be considered and may be used to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *See* SSR 06-03p. The ALJ properly considered Mr. Lilley's opinion in his decision. (TR 24). Further, the ALJ may use evidence from "other sources" when evaluating an "acceptable medical source's" opinion, considering factors which tend to support or contradict that opinion. *Id.* The Court finds that the ALJ properly considered Mr. Lilley's report. (TR 24, 269-75).

Plaintiff argues that the opinions of Drs. Tracy and Riess demonstrate that Plaintiff is unable to perform substantial gainful activity and are in direct conflict with the ALJ's findings. (TR 299-300, 303-04, 343-44). Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Apfel*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e). Therefore, the ALJ did not err in failing to adopt any physician's or treating source's conclusory designation of Plaintiff as "disabled" or unable to work, including the conclusions of Drs. Reiss and Tracy.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded

substantial deference.  Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's

opinion controlling weight if it is well supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.

The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded

greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at

529-30.

  If an ALJ rejects a treating physician's opinion, he must "give good reasons" for doing so

in his written opinion.  *See* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-5p and 96-2p.

Furthermore, the Sixth Circuit has noted that the ALJ must provide good reasons for the weight

given a treating source's opinion. *Wilson v. Comm'r of Social Sec'ty*, 378 F.3d 541, 544 (6th Cir.

2004).  The reasons must be "sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *5).

  As set forth above, the ALJ only generally asserts that Dr. Tracy's opinion, including the

limitations she set forth in the Medical Assessment of Physical Capacity, is not supported by

medical evidence in the record.  (TR 24, 343-44).  As early as January 2005 Dr. Tracy referred

Plaintiff for bone imaging, a radionuclide angiogram and blood pool images which showed plantar

fasciitis and degenerative changes of Plaintiff's feet.  (TR 367).  The ALJ did not cite evidence

which contradicts Dr. Tracy's opinions, including her opinion that Plaintiff cannot bend.  Plaintiff

himself testified that he cannot bend.  (TR 400A, 404).  This alleged limitation was not included in

the RFC or discussed in the ALJ's decision.  The Court should remand the case for proper evaluation

of Dr. Tracy's opinion and evidence and the ALJ should give specific reasons for the weight

assigned to this evidence.

Plaintiff argues that Dr. Riess's opinion demonstrates that Plaintiff is not able to engage in substantial gainful activity and is in direct conflict with the ALJ's findings. The ALJ is required to consider the applicant's medical situation as a whole. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). Although the ALJ is not required to discuss every piece of evidence in the record, an ALJ should discuss evidence that, if believed, could lead to a finding of disability. In reviewing the ALJ's decision, the Court must scrutinize the record in its entirety. *See Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). Dr. Riess's records to which Plaintiff cites are not in conflict with the ALJ's opinion. (TR 299-300, 303-04). These records include a series of Physician Report for Disability Benefits forms on which Dr. Reiss orders that Plaintiff is unable to work for a prescribed period of time, pending evaluation on a prescribed date. For example, on November 26, 2003 Dr. Riess opined that Plaintiff should remain off work until a re-evaluation on December 26, 2003. (TR 303-04). The ALJ discussed Dr. Riess's recommendation's including a referral for an epidural steroid injection. (TR 371). The ALJ properly considered Dr. Riess's opinions and they are not in conflict with the ALJ's opinion.

The Plaintiff also argues that the ALJ rejected the state agency physician's findings but concurred in his determination that Plaintiff was not disabled. An ALJ must evaluate all of the medical opinion evidence regardless of its source, including the opinions of non-examining medical consultants. 20 C.F.R. § 404.1527(d), (f); *see, e.g. Coombs v. Comm'r of Soc. Sec.*, 459 F.3d 649, 651 (6th Cir. 2006)(en banc). Contrary to Plaintiff's assertion, the ALJ did not reject the state agency physician's findings. The limitations set forth in the ALJ's RFC are equal too and more restrictive than those set forth by the state agency physician. (TR 23, 323). The Court cannot find

error in the ALJ's consideration of the state agency physician's opinion.

Plaintiff generally alleges that the ALJ failed to explain the weight given to any of the medical opinions of record. The Court agrees with respect to Dr. Tracy's opinion and evidence relating to Plaintiff's alleged RSD and plantar fasciitis, as set forth above, and the matter should be remanded to further consider those issues. As to the remainder of the record, the ALJ discussed the evidence which, if believed, could result in a finding of disability.

### *Plaintiff's Credibility*

Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1529 and SSR 96-7p when he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (TR 24). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

To the extent the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence

14

does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ made a general statement that he had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p." (TR 24). The ALJ also stated that he gave "specific consideration" to Plaintiff's daily activities and the other elements required under 20 C.F.R. § 404.1529(c)(3). (TR 24). It is not enough to state that the regulations and rulings were followed. The ALJ's decision does not show which of Plaintiff's allegations, statements, symptoms or limitations the ALJ found to be less than credible, the weight given to those statements and the reasons for that weight. The Court cannot assume that the ALJ found that none of Plaintiff's allegations are credible.

"While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. Most importantly he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Although the ALJ states that he considered Plaintiff's daily activities, he does not specifically mention any that undermine Plaintiff's credibility. The ALJ states that Plaintiff "reported that he did nothing but watch television all day." (TR 24). It is unclear how Plaintiff's television viewing undermines his

15

credibility. (TR 24). The ALJ only generally states that the medical evidence in the record does not

support Dr. Tracy's limitations. (TR 24). Without further specificity by the ALJ, the Court cannot

determine whether the ALJ's conclusion is based on substantial evidence.

The ALJ may consider that Plaintiff may have had little incentive to return to work.

However, the occupational therapist's record to which the ALJ refers is not substantial evidence to

support a finding that Plaintiff is not credible. (TR 24). The ALJ points out that Plaintiff told Mr.

Lilley that he was concerned that if he returned to his previous work he would be the first person

laid off due to his lack of seniority. (TR 24). The comment appears to be taken out of context[1]. (TR

275).

The credibility of Plaintiff's statements has significant ramifications. The VE testified that

if Plaintiff's complaints were credited, Plaintiff could not perform his past relevant work or any

other competitive employment. (Tr. 408-09). Based upon the foregoing, the Court concludes that

substantial evidence does not support the ALJ's credibility assessment. Therefore, the case must

be remanded so that the ALJ may conduct a re-assessment of Plaintiff's credibility, specifically

citing which of Plaintiff's claims are or are not credited and the evidentiary basis for those

conclusions. Thereafter, the ALJ should: (1) specifically state whether Plaintiff's credible

complaints affect the RFC finding and the reasons for those decisions; and (2) conduct a new step

four analysis if otherwise appropriate and proceed to a step five analysis if necessary. If the ALJ

---

[1]"Mr. Allshouse states that he would like to go back to work but claims he cannot go
back to work without restrictions. He claims that if he couldn't return to his previous work that
he would perform some type of data entry work since he enjoys working on computers. Mr.
Allshouse stated that he was concerned that if he did go back to work that he would be the first
person to get let go in the Custodial department because he lacks seniority. He indicated that 3
other custodians were let go in March 2003." (TR 275).

reaches a step five determination on remand, the hypothetical question to the VE must incorporate

the limitations the ALJ accepts as credible and supported by the record. *See Casey v. Sec'y of*

*Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993).

### *Commissioner's Burden at Step Five*

Plaintiff argues that the ALJ failed to meet his burden at step five to show that there is other

work in the economy which Plaintiff can perform. Plaintiff argues that the RFC did not include all

of Plaintiff's limitations and therefore the hypothetical question to the VE was incomplete. The

Court need not reach this issue because the case will be remanded for further consideration of the

issues set forth above. The Court cannot find that the ALJ's RFC was based on substantial evidence

in light of the improper credibility determination, failure to properly consider Dr. Tracy's opinion

and failure to address Plaintiff's alleged RSD and plantar fasciitis.

Plaintiff also argues that the jobs which the VE testified were available to Plaintiff are

classified in the DOT at higher exertional levels than Plaintiff's RFC allows and the sit/stand option

is not addressed in the DOT. Plaintiff argues that SSR 00-4p requires that the case be remanded to

resolve these conflicts between the VE's testimony and the DOT. SSR 00-4p provides that before

an ALJ may rely upon a VE's testimony, the ALJ must address any apparent unresolved conflicts

between the jobs identified by the VE and the DOT's classification of those jobs. SSR 00-4p places

an affirmative duty upon an ALJ to: (1) ask the VE whether any conflicts exist between the expert's

testimony and the DOT, (2) "elicit a reasonable explanation" for any such conflict, and (3) explain

the resolution of the conflict. SSR 00-4p.

The ALJ asked the VE whether her testimony was different from or consistent with the DOT.

The VE testified that her testimony was different from the DOT only to the extent the jobs require

a sit/stand option, which is not a concept recognized by the DOT. The VE testified that in addressing the sit/stand option she relied on her own education and experience, in addition to the Unskilled Employment Quarterly. (TR 408). The VE properly testified from her own experience that a sit-stand option is available in the listed jobs. *See Zarkowski v. Barnhart*, 417 F. Supp. 2d 758, 767 (D. S.C. 2006); *see also Sharp v. Barnhart*, 152 Fed. Appx. 503 (6th Cir. 2005). Therefore, no error occurred with respect to the sit/stand option.

The conflict between the VE's testimony and that of the DOT with respect to the exertional levels of the occupations provided by the VE remains unresolved. Although the VE listed several jobs in the economy that Plaintiff could perform and are unskilled and sedentary, the VE did not provide DOT codes with these positions. (TR 408). Plaintiff argues that many of these positions are listed in the DOT at a higher exertional level, and in some cases a higher skill level, than that of Plaintiff's RFC[2]. The Court agrees. Without the codes for the positions which the VE listed, neither Plaintiff nor the Court can properly determine whether a conflict exists between the VE's testimony and the DOT. *See Teverbaugh v. Comm'r of Social Sec.*, 258 F. Supp. 2d 702, 705 (E.D. Mich. 2003). To the extent a conflict exists, the ALJ must elicit a reasonable explanation for such a conflict and thereafter resolve it. SSR 00-4p.

In light of the unresolved conflict between the VE's testimony and the DOT with respect to the exertional classification of the occupations, the Court cannot rule that there is substantial evidence to support the ALJ's step five finding. The Court finds that the record requires further development as additional factual questions require resolution at the administrative level. A remand

---

[2]For example, Plaintiff points out that the DOT classifies "hand packager" (DOT 920.587-018) as medium work.

for further fact finding is required so that the Commissioner can, if necessary, conduct a new step five inquiry, provide DOT codes  and apply SSR 00-4p.

**RECOMMENDATION:**

The Commissioner's decision is not supported by substantial evidence.  The Defendant's Motion for Summary Judgement should be denied, Plaintiff's Motion for Summary Judgment should be denied, and the case remanded for further proceedings.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 18, 2008                    s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 18, 2008                    s/ Lisa C. Bartlett
                                          Courtroom Deputy